Slip Op. 19-138

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| POSCO,<br><br>              Plaintiff,<br><br>NUCOR CORPORATION,<br><br>              Consolidated Plaintiff,<br><br>ARCELORMITTAL USA LLC and SSAB ENTERPRISES LLC,<br><br>              Plaintiff-Intervenors,<br><br>           v.<br><br>UNITED STATES,<br><br>              Defendant,<br><br>           and<br><br>SSAB ENTERPRISES LLC, NUCOR CORPORATION, ARCELORMITTAL USA LLC and POSCO,<br><br>              Defendant-Intervenors. | Before: Gary S. Katzmann, Judge<br>Consol. Court No. 17-00137 |

## OPINION

[Commerce's Final Results of Redetermination pursuant to Court Remand are sustained.]

Dated: November 8, 2019

Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Brady W. Mills, Mary S. Hodgins, Eugene Degnan, and Ragan W. Updegraff, Morris, Manning & Martin LLP, of Washington, DC, for plaintiff and defendant-intervenor *POSCO*.

Christopher Weld, Alan H. Price, and Adam M. Teslik, Wiley Rein, LLP, of Washington, DC, for consolidated plaintiff and defendant-intervenor *Nucor Corporation*.

John Herrmann and Christopher Cloutier, Kelley Drye & Warren, LLP, of Washington, DC, for plaintiff-intervenor and defendant-intervenor *ArcelorMittal USA LLC*.

Roger B. Schagrin, Schagrin Associates, of Washington DC, for plaintiff-intervenor and defendant-intervenor *SSAB Enterprises LLC*.

Kelly A. Krystyniak, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant *United States*. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, Tara K. Hogan, Assistant Director. Of counsel on the brief was Reza Karamloo, Senior Attorney, Office of the Chief Counsel Commercial Litigation Branch for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Katzmann, Judge: The court returns to Plaintiff POSCO's challenge to the U.S. Department of Commerce's ("Commerce") final affirmative determination in the countervailing duty investigation of certain carbon and alloy cut-to-length ("CTL") plate from Korea. Certain Carbon and Alloy Steel Cut-To-Length Plate From the Republic of Korea: Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination ("Final Determination"), 82 Fed. Reg. 16,341 (Dep't Commerce Apr. 4, 2017), P.R. 505 and accompanying Issues and Decision Memorandum ("IDM") (Mar. 29, 2017), P.R. 497. Before the court now are Commerce's Final Results of Redetermination Pursuant to Court Remand ("Remand Results") (Dep't Commerce July 1, 2019), ECF No. 97, which the court ordered in POSCO v. United States, 42 CIT __, 353 F. Supp. 3d 1357 (2018) ("POSCO I") and POSCO v. United States, 43 CIT __, __, 382 F. Supp. 3d 1346 (2019) ("POSCO II"). The court sustains Commerce's Remand Results.

**BACKGROUND**

The relevant legal and factual background of the underlying action is set forth in greater detail in POSCO I, 353 F. Supp. 3d at 1363–69 and POSCO II, 382 F. Supp. 3d at 1348.

In 2016, Commerce initiated a countervailing duty investigation of certain carbon and alloy steel cut-to-length ("CTL") plate from Korea, with a period of investigation ("POI") of January 1, 2015 through December 31, 2015. Certain Carbon and Alloy Steel Cut-to-Length Plate from

Brazil, the People's Republic of China, and the Republic of Korea: Initiation of Countervailing Duty Investigations, 81 Fed. Reg. 27,098 (Dep't Commerce May 5, 2016), P.R. 59.  POSCO was a mandatory respondent.  Respondent Selection Memorandum (Dep't Commerce May 31, 2016), P.R. 102.  On April 4, 2017, Commerce issued its Final Determination, imposing a countervailing duty ("CVD") rate of 4.31 percent on POSCO.

Before the court, POSCO challenged several aspects of Commerce's Final Determination, including POSCO M-Tech's failure to report R&D grants received by companies it had acquired, Commerce's application of AFA to POSCO Chemtech's failure to timely report port usage grants, and Hyundai's failure to report assistance received under Korea's Restriction on Special Taxation Act ("RSTA") Article 22.  POSCO I and POSCO II.  Nucor, moreover, challenged Commerce's determination with regards to the attribution of electricity subsidies.  Id.

In POSCO I, the court affirmed several aspects of Commerce's Final Determination.  The court upheld Commerce's application of AFA to POSCO M-Tech's unreported additional government subsidies, but remanded to the agency for reconsideration of its determination that the assistance received by POSCO M-Tech was countervailable.  Pertinent to the Remand Results now under review, the court concluded that (1) Commerce failed to make the requisite factual findings to meet the specificity and benefit requirements of countervailability for the R&D grants received by Ricco Metal and Nine-Digit; and (2) Commerce did not conduct a fact-specific inquiry necessary to justify its application of the highest AFA rates to POSCO.  POSCO I, 353 F. Supp. 3d at 1374−76.  Accordingly, it remanded the Final Determination to Commerce to make those required fact-specific inquiries and for reconsideration of "why the highest available rate should apply to POSCO."  Id. at 1383.  Given that the court remanded "the issue of the use of the highest

available AFA rate . . . the court [did] not address POSCO's contention that Commerce failed to corroborate the AFA rates under 19 U.S.C. § 1677e(c)(1)." Id. at 1383 n.15.

POSCO moved for the court to reconsider its affirmance of (1) Commerce's application of the 1.05 percent AFA rate to POSCO M-Tech for unreported government subsidies received by Ricco Metal and Nine-Digit, both companies acquired by POSCO M-Tech; and (2) Commerce's application of the 1.05 percent AFA rate to Hyundai and attribution of this rate to POSCO. Mot. of Pl. POSCO for Reh'g. and Recons. at 2–3, Dec. 21, 2018, ECF No. 83. In POSCO II, responding to the motion for reconsideration, the court concluded that "Commerce did not provide any additional explanation of how it determined that there was no identical program before moving to the second step of its AFA methodology -- using the rate in another investigation -- and thus did not make the requisite factual findings to address POSCO's contention that the [Industrial Technology Innovation Promotion Act] ITIPA grant was an identical program in the proceeding." POSCO II, 382 F. Supp. 3d at 1349. The court thus additionally remanded to Commerce for further consideration the issue of whether, under the first step of the AFA methodology, a program identical to the assistance received by Ricco Metal and Nine-Digit existed. Id. However, the court denied POSCO's motion to reconsider the application of AFA to Hyundai and the attribution of that rate to POSCO. POSCO II, 382 F. Supp. 3d at 1346.

Commerce filed the Remand Results with the court on July 1, 2019. Commerce (1) concluded that POSCO M-Tech's R&D grants received by Ricco Metal and Nine-Digit were countervailable because the benefit and specificity requirements were met; (2) found that the use of the highest AFA rate was appropriate in light of POSCO's failure to cooperate; (3) reconsidered the use of the 1.64 percent rate for the port usage grants and reduced the rate to 1.05 percent; and (4) addressed whether an identical program existed as part of the AFA methodology. Remand

Results at 1–2.  POSCO and Nucor filed their comments on the Remand Results on July 31, 2019.  POSCO's Br.; Nucor's Br.  The Government filed its reply to the comments on the Remand Results on August 15, 2019.  Def.'s Br.

## DISCUSSION

Commerce's Remand Results are consistent with the court's remand orders in POSCO I and POSCO II.  POSCO and Nucor do not challenge Commerce's findings on remand that the benefit and specificity requirements were met such that the assistance received by POSCO M-Tech was countervailable.  POSCO's Br.; Nucor's Br.  POSCO does, however, argue that Commerce failed to comply fully with the court's orders in POSCO I and POSCO II because it did not explain whether an identical program existed before moving on the second step of the AFA methodology as applied to POSCO M-Tech's ITIPA grants and failed to conduct the additional analysis required by 19 U.S.C. § 1677e(d)(2) to justify the use of the highest AFA rate out of all possible rates.  POSCO's Br. at 3.  POSCO also asserts that Commerce did not corroborate the 1.64 percent rate from *Refrigerators from Korea* but agrees with the resulting 1.05 percent rate for the port usage grants on remand.  Id. (stating that "POSCO agrees with the result of Commerce's reconsideration of this issue and has no comments").  Nucor asks the court to sustain Commerce's Remand Results with respect to Commerce's application of the highest AFA rate to POSCO M-Tech's R&D grant assistance but contends that Commerce's reduction of the 1.64 percent rate to 1.05 percent rate was unlawful because it exceeded the scope of the court's orders in POSCO I and POSCO II.  Nucor's Br. at 2–3.  POSCO and Nucor's arguments are not meritorious, and the court sustains the Remand Results.

### I.   *Commerce's Countervailability Determination*

As has been noted, in POSCO I, the court concluded that Commerce failed to make the "prerequisite factual findings" to meet the benefit and specificity requirements of a countervailability finding, as required by 19 U.S.C. § 1677(5), for the assistance received by Ricco Metal and Nine-Digit. POSCO I 353 F. Supp. 3d at 1376. The court, therefore, remanded to "Commerce for reconsideration its determination that the assistance received by Ricco Metal and Nine-Digit was countervailable." Id. On remand, the Government contends that "Commerce explained that: (1) record evidence indicates research and development grants provided by the Korean government to steel producers are de jure specific; (2) such grants constitute financial contributions in the form of direct transfer of funds; and (3) the subsidies at issue confer a benefit in the form of a grant." Def.'s Br. at 6 (emphasis omitted). POSCO and Nucor do not dispute Commerce's benefit and specificity findings on remand, and thus this issue is deemed waived. Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, 1350 (Fed. Cir. 2016). The court thus sustains Commerce's countervailability determination for the assistance received by Ricco Metal and Nine-Digit.

### II.   *Commerce's Application of the Highest AFA Rate to POSCO*

#### A.   *Commerce's Justification of the Highest AFA Rate Available*

POSCO first objects to Commerce's use of the highest available AFA rate because it argues that Commerce failed to justify the use of that rate, as required by 19 U.S.C. § 1677e(d)(2). POSCO's Br. at 2. POSCO contends that on remand Commerce "merely restated the same facts that contributed to its decision to apply AFA in the first place," and "continues to insist that 19 U.S.C. § 1677e(d)(2) does not require additional analysis." POSCO's Br. at 2. POSCO, however, does not elaborate on where in the Remand Results Commerce merely restates the same facts.

In POSCO I, the court held that 19 U.S.C. § 1677e(d)(2) requires Commerce "to do 'something more—i.e., an evaluation of the specific situation,' to justify its decision to apply the highest available rates out of all possible rates." POSCO I, 353 F. Supp. 3d at 1382 (quoting POSCO v. United States, 42 CIT __, __, 296 F. Supp. 3d 1320, 1349 (2018) and citing NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1319–20 (Fed. Cir. 2009)). Commerce must "conduct a fact-specific inquiry and [] provide its reasons for selecting the highest rate out of all potential countervailable subsidy rates in a particular case." POSCO I, 353 F. Supp. 3d at 1382 (quoting POSCO v. United States, 42 CIT __, __, 337 F. Supp. 3d 1265, 1278 (2018)). The court thus remanded for reconsideration Commerce's use of the highest AFA rate "[b]ecause Commerce failed to evaluate -- beyond its adverse inference determination -- why the highest available rate should apply to POSCO." POSCO I, 353 F. Supp. 3d at 1383.

While the Government continues to argue that 19 U.S.C. § 1677e(d)(2) does not require additional analysis beyond that which was done in the Final Determination, Commerce nonetheless conducted the requisite fact-specific inquiry under respectful protest. Remand Results at 20–26. On remand, Commerce first conducted the requisite analysis under sections 19 U.S.C. § 1677e(a) and (b) to reach the rates available under section 19 U.S.C. § 1677e(d)(1), explaining that it applied AFA to POSCO for "(1) failing to disclose additional government subsidies received by its cross-owned company POSCO M-Tech; (2) failing to disclose receipt of port usage grants by its cross-owned company POSCO Chemtech; and (3) Hyundai's failure to disclose a tax exemption under Korea's RSTA Article 22." Remand Results at 17. Commerce explained that POSCO's "inaccurate reporting created gaps in the evidentiary record and that POSCO and Hyundai failed to act to the best of its ability . . ." Id. Commerce then outlined the factors it considered in selecting an AFA rate, including the "need to induce cooperation," "the relevance of a rate to the industry

in the country under investigation," and "the relevance of a particular program." Remand Results at 13. Among the pool of rates, Commerce used these factors to determine which rate to apply at each step of the AFA hierarchy. Remand Results at 14.

Commerce addressed the rates applied to POSCO M-Tech, POSCO Chemtech, and Hyundai. With respect to POSCO M-Tech, Commerce noted that "POSCO M-Tech's counsel stated at verification that it exercised its discretion in not reporting these subsidies" and that POSCO M-Tech's decision to withhold the information "precluded Commerce from fully investigating the program and its use by POSCO M-Tech." Id. at 17. Commerce further explained that there was nothing on the record to suggest another rate and that Commerce thus continued to apply the 1.05 percent rate calculated in *Washers from Korea* to POSCO M-Tech. Id. Commerce then reiterated POSCO's failure to report the port usage grants for POSCO Chemtech by the deadline, as well as its failure to cooperate and act to the best of its ability in reviewing other records indicating assistance. Id. at 18. As addressed below, however, Commerce adjusted the rate applied to POSCO Chemtech from the 1.64 percent rate in *Refrigerators from Korea* to the 1.05 percent rate in *Washers from Korea* to "be consistent with the cold rolled steel and hot rolled steel proceedings." Id. at 18. Lastly, Commerce explained why its application of the AFA hierarchy was appropriate based on Hyundai's failure to submit the correct tax return information. Id. at 18–19. Commerce asserted that the rates were appropriate because POSCO failed to cooperate in several respects, and Commerce applied the highest possible rate only after evaluating the "situation," as required by 19 U.S.C. § 1677e(d)(2). Id. at 19–20.

In light of Commerce's authority to "apply any of the countervailable subsidy rates or dumping margins specified under [19 U.S.C. § 1677e(d)(1)], including the highest such rate or margin, based on [its] evaluation of the situation that resulted in . . . using an adverse inference in

selecting among the facts otherwise available,"[1] and Commerce's explanation of why the highest rate should apply here, the court sustains the 1.05 percent rate from *Washers from Korea* as supported by substantial evidence and otherwise in accordance with law.

### B. Commerce's Finding of No Identical Program with a Non-Zero Rate Under Step One of the AFA Methodology

POSCO next contends that Commerce failed to comply with the court's order in POSCO II because it failed to make the requisite factual findings regarding whether an identical program existed before moving to the second step of the AFA methodology. POSCO's Br. at 3. According to POSCO, Commerce "ignore[d] contrary record evidence discussed in POSCO's Rule 56.2 brief regarding the operation of the ITIPA program and its own verification report that describes the discovered R&D benefits as being the same as the ITIPA program" and thus Commerce "merely restated the same fact that contributed to its decision to apply AFA in the first place." POSCO's Br. at 3.

---

[1] 19 U.S.C. § 1677e(d)(1)(A) provides for possible subsidy rates that Commerce may apply when relying on an inference that is adverse to the interests of the party at issue in a countervailing duty proceeding. Commerce may:

(i) use a countervailable subsidy rate applied for the same or similar program in a countervailing duty proceeding involving the same country; or

(ii) if there is no same or similar program, use a countervailable subsidy rate for a subsidy program from a proceeding that the administering authority considers reasonable to use

19 U.S.C. § 1677e(d)(2) provides that:

In carrying out paragraph (1), the administering authority may apply any of the countervailable subsidy rates or dumping margins specified under that paragraph, including the highest such rate or margin, based on the evaluation by the administering authority of the situation that resulted in the administering authority using an adverse inference in selecting among the facts otherwise available.

The court is not persuaded by POSCO's argument and instead determines that Commerce's finding on remand that no identical program existed was sufficient to move to the second step of the AFA hierarchy. In POSCO II, the court concluded that Commerce had not "provide[d] any explanation of how it determined that there was no identical program before moving to the second step of its AFA methodology – using the rate in another investigation – and thus did not make the requisite factual findings to address POSCO's contention that the ITIPA grant was an identical program in the proceeding." POSCO II 382 F. Supp. 3d at 1349. Addressing POSCO's Comments on Commerce's Draft Results of Redetermination, Commerce explained:

> We disagree that record information regarding the R&D subsidies received by Nine-Digit and Ricco Metal demonstrates that these grants were received under the ITIPA program. The verification report details the fact that POSCO M-Tech provided two contradictory explanations regarding the nature of these subsidies – neither of which comports with our understanding of how the ITIPA program works.

Remand Results at 30. Commerce then noted that POSCO M-Tech "did not identify the specific program under which Ricco Metal received its R&D subsidy." Id. POSCO, moreover, "claimed at verification that Nine-Digit repaid the R&D subsidy in full," but "record evidence indicates that the ITIPA program requires companies to repay only 40 percent of a received grant." Id. (emphasis omitted). Commerce also found a discrepancy between the royalty paid by Nine-Digit and the percentage of the royalty exempted under the ITIPA program. Id. at 31. Commerce next explained that it lacked sufficient evidence to "draw inferences about the tax treatment of ITIPA subsidies. . ." Id. Lastly, Commerce noted that the Government of Korea provided information on ITIPA grants for certain respondents but did not do so for Ricco Metal or Nine-Digit. Id. Commerce thus concluded in its Remand Results that, without ITIPA, "there are no non-zero rates calculated for a cooperating company in this investigation for an identical program." Id. at 24. Commerce, therefore, set out its rationale and made the requisite factual findings to move beyond step one of

the AFA hierarchy.  Commerce's AFA rate of 1.05 percent for POSCO M-Tech is supported by substantial evidence and thus sustained.

> III.  *Commerce's Reconsideration of the Rate Applied to POSCO for the Port Usage Grants*

Nucor argues that Commerce's reconsideration of the AFA rate applied to the port usage grants for the Pohang Youngil Program exceeded the scope of this court's order.  Nucor contends that because the court declined to "address POSCO's contention that Commerce failed to corroborate the AFA rates," the court should hold unlawful Commerce's decision to revise the calculation and use the 1.05 percent rate from *Washers for Korea* in lieu of the 1.64 percent rate from *Refrigerators for Korea*.  Nucor's Br. at 1.  Nucor asserts that "Commerce's unilateral decision to reconsider an aspect of the final determination with which the [c]ourt has yet to find error, that the agency continues to assert was correct, and that has a material impact on the effectiveness of the countervailing duty order" cannot be sustained.  Id. at 3.  While "Commerce's determinations on remand are limited by the scope of the court's remand orders," Nucor's Br. at 2, Commerce's actions were within the scope of the court's orders.  The court thus sustains the rate of 1.05 percent as applied to the port usage grants.

Contrary to Nucor's narrow interpretation of the court's orders, the court ordered Commerce to reconsider its application of the highest AFA rates, make the requisite factual findings pursuant to AFA hierarchy, and justify the rates among those available.  Commerce did just this.  The court's orders here cannot be construed so narrowly as to "prevent[] Commerce from undertaking a fully balanced examination that might have produced more accurate results."  *Am. Silicon Techs. v. United States*, 334 F.3d 1033, 1038–39 (Fed. Cir. 2003).  Commerce determined that the 1.05 percent rate was "reasonable [and] reliable" and "maintains consistency across agency proceedings."  Remand Results at 28.  Commerce further explained how it selected the 1.05 percent

rate under the AFA hierarchy as the appropriate rate. Remand Results at 22–26. The court thus sustains the new rate of 1.05 percent as applied to the POSCO Chemtech port usage grants because Commerce's determination was supported by substantial evidence and in accordance with law.

## CONCLUSION

The court concludes that (1) Commerce's factual findings of benefit and specificity met the countervailability requirement for the assistance received by Ricco Metal and Nine-Digit; (2) Commerce sufficiently justified its application of the highest AFA rate available; (3) Commerce made the requisite finding of no identical program under the first step of the AFA hierarchy before proceeding to the second step; and (4) Commerce did not exceed the scope of the court's orders in revising the AFA rate as applied to the port usage grants. The court thus sustains the Remand Results.

SO ORDERED.

/s/ Gary S. Katzmann
Gary S. Katzmann, Judge

Dated: November 8, 2019
New York, New York